**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

ASMAR THOMPSON,

           Plaintiff,

      v.

THE DEPARTMENT OF
CORRECTIONS, *et al.*,

          Defendants.

Civil Action No. 19-16391 (MAS) (LHG)

**OPINION**

**SHIPP, District Judge**

Plaintiff Asmar Thompson, a state prisoner currently incarcerated at New Jersey State Prison, filed an amended civil rights complaint asserting claims pursuant to 42 U.S.C. § 1983. (Am. Compl., ECF No. 10.) Plaintiff separately filed a motion for a temporary restraining order ("TRO") and preliminary injunction. (Mot., ECF No. 6.) The Court will now review the Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons set forth below, the Amended Complaint is permitted to proceed in part and the motion for a TRO and preliminary injunction is denied without prejudice.

## I.    BACKGROUND

Plaintiff's allegations are accepted as true for the purposes of screening pursuant to 28 U.S.C. §§ 1915A(b) and 1915(e)(2)(B). Plaintiff names the following Defendants in his

Amended Complaint:[1]  Sergeant[2] Christopher Donet, Sergeant P.A. Rodriguez, Administrator Bruce Davis, Superintendent David Richards, Ms. Tina Cortes, Officer C. Raylock, Sergeant Johnson, Officer E. Jennings, Officer Spenatta, Lieutenant Patterson, Officer Whitlock, Sergeant Omar Mendoza, Officer Raily, Superintendent Amy Emlich, Major Sears and Officer John Doe. (Am. Compl., ECF No. 10 at 2-8.)

Although Plaintiff's Amended Complaint is somewhat difficult to decipher[3], the Court has discerned the following alleged facts.  On July 22, 2018, Officer Jennings passed by Plaintiff's cell as Plaintiff was using the bathroom.  (*Id.* at 16.)  Despite the fact that Plaintiff had a "block up" to prevent anyone from viewing him using the bathroom in his cell, Officer Jennings commented that he "like[d] what he saw."  (*Id.*)  When Plaintiff later saw Sergeant Johnson, Plaintiff informed him about the comment from Officer Jennings.  (*Id.*)  In response, Sergeant Johnson "did nothing."  (*Id.*)  Plaintiff states that he was subjected to an unnecessary strip search when he returned to his unit the following day.  (*Id.* at 17.)  Plaintiff subsequently filed a "PREA complaint"[4] against Officer Jennings.  (*Id.* at 18.)  Plaintiff was interviewed regarding this complaint by Special Investigations Division ("SID") officer, John Doe.  (*Id.* at 15, 18.)  Plaintiff

---

[1] Plaintiff's original complaint named the Department of Corrections ("DOC") as a Defendant. (Compl., ECF No. 1.)  However, the DOC is not named in Plaintiff's Amended Complaint.  (Am. Compl., ECF No. 10.)  As discussed further below, to the extent Plaintiff is attempting to raise any claims against the DOC, those claims are dismissed with prejudice.

[2] Although spelled differently in the Amended Complaint, the Court utilized the correct spelling of "Sergeant" throughout this Opinion for consistency.

[3] For purposes of this Opinion, the Court sets forth verbatim quotations from the Amended Complaint without utilization of the word "sic" throughout.

[4] Although Plaintiff does not state what "PREA" stands for, the Court infers that Plaintiff is referencing the Prison Rape Elimination Act, commonly referred to as "PREA."  *See* 34 U.S.C. § 30301, *et seq.*; *see also Armstrong v. Diraimo*, 781 F. App'x 61, 62 (3d Cir. 2019) (referring to Prison Rape Elimination Act as PREA).

states, however, that John Doe was biased in his investigation because John Doe is a "homosexual" and had previously investigated another PREA complaint Plaintiff had filed against Officer Spenatta. (*Id.* at 18.)

On October 11, 2018, Plaintiff was informed by Sergeant Donet that he was being placed on Temporary Close Custody ("TCC") status upon the administration's orders. (*Id.* at 8.) Plaintiff was taken to the medical department for an evaluation before his placement. (*Id.* at 9.) Upon returning to his cell, Plaintiff found an officer removing all of his personal property. (*Id.*) After questioning Sergeant Donet about this, Sergeant Donet allegedly "slammed" Plaintiff to the ground "for no reason." (*Id.*) When Plaintiff fell, he hit his head against the ground and the handcuffs around his wrists, which were also attached to a waist belt, tightened. (*Id.*) After the incident, Plaintiff was taken back to the medical unit to be evaluated for his injuries. (*Id.*) Plaintiff alleges that his handcuffs had become too tight as a result of his fall and he asked Sergeant Rodriguez, who was present with him in the medical unit, to loosen them. (*Id.*) Sergeant Rodriguez refused. (*Id.*) Plaintiff asserts that the excessively tight handcuffs caused him to suffer nerve damage and that he continues to experience persistent numbness in his hands. (*Id.* at 24.) Plaintiff alleges that Sergeant Donet subsequently filed a "false" disciplinary report regarding the events of October 11, in which he stated that Plaintiff became aggressive after being informed that he would be placed on TCC status. (*Id.* at 9.) Plaintiff contends that Sergeant Donet's actions on October 11 were in retaliation for Plaintiff's prior filing of PREA complaints against other prison officers. (*Id.* at 9-10.)

On October 15, 2018, Ms. Cortes, a hearing examiner, visited Plaintiff's cell to conduct a disciplinary hearing regarding the events of October 11. (*Id.* at 11.) Plaintiff alleges that Ms. Cortes did not allow him the opportunity to present his version of events or the opportunity to view

the evidence against him. (*Id.*) Despite Plaintiff's request to review video footage of the incident, Ms. Cortes allegedly stated that if Plaintiff did not "get it over now," she would "give [him] way more time." (*Id.*) Plaintiff states that Ms. Cortes was "already bias from past issues," including Plaintiff's prior filing of a grievance against one of her co-workers. (*Id.* at 3, 11.)

On October 19, 2018, Officer Spenatta visited Plaintiff's cell and inquired whether Plaintiff wanted to review the video footage related to his disciplinary hearing. (*Id.* at 14.) Plaintiff questioned whether this was proper procedure and informed Officer Spenatta that he already told Ms. Cortes that he wanted to review the camera footage at his disciplinary hearing. (*Id.*) In an attempt to "alter[] and/or disrupt [Plaintiff's] disciplinary hearing," Officer Spenatta allegedly informed other officers that Plaintiff had declined to view the camera footage. (*Id.* at 15.) Plaintiff states that this was done in retaliation for a PREA complaint he had previously filed against Officer Spenatta. (*Id.*) The basis for the PREA complaint was allegedly that Officer Spenatta, after conducting a strip search of another inmate, told Plaintiff that he "wanted to see [his] penis next." (*Id.* at 14.)

Plaintiff alleges Sergeant Mendoza informed him on October 19, 2018 that he "was going to Courtline Camra more."[5] (*Id.* at 15.) This was apparently ordered by Lieutenant Patterson. (*Id.*) Lieutenant Patterson also allegedly indicated that Plaintiff "was camra more every[]time he comes out his cell a violation of his Due Process which the Plaintiff was not given Notice and furthermore their is no such status in the 10A and the Plaintiff has been on involuntary PC since 2018 an no such more[.]" (*Id.*)

---

[5] The Court assumes that the term "courtline" refers to a "disciplinary hearing held in prison." *White v. Napoleon*, 897 F.2d 103, 106 n.1 (3d Cir. 1990). However, it is unclear what Plaintiff means when he uses the terms "courtline camra" or "camra."

Plaintiff additionally alleges that he was physically assaulted by Officer Raylock on an unspecified date and time. (*Id.* at 19.) Plaintiff states that while he was handcuffed, Officer Raylock grabbed him, "pushed" him to the ground, and ordered other officers to pepper spray him. (*Id.*)

Plaintiff also asserts generally that Officer Whitlock used to give him "predatory looks" when he would use the showers or work out in his cell. (*Id.* at 21.) Plaintiff states that when he began using the "block" to shield himself, Officer Whitlock "had a problem" and began giving Plaintiff disciplinary charges. (*Id.*) As a result of these charges, Plaintiff's property was taken. (*Id.*) When it was given back, Officer Whitlock did not immediately return Plaintiff's television. (*Id.*)

Lastly, Plaintiff alleges that he has been placed in involuntary protective custody. (*Id.* at 25.) Plaintiff states that despite having multiple hearings regarding his custody status, his requests to be released from protective custody have been denied by Superintendent Richards due to "bias." (*Id.* at 12-13, 21.) Plaintiff asserts that his continued placement in involuntary protective custody is a means of "retaliation" by Superintendent Emlich, Administrator Davis, Superintendent Richards, and Major Sears. (*Id.* at 25-26.) Plaintiff also states he has been forced to move cells twice because a particular officer, Officer Raily, is "racist" and wanted Plaintiff "off [his] unit." (*Id.* at 13.)

## II.    <u>LEGAL STANDARD</u>

Under the Prison Litigation Reform Act ("PLRA"), district courts are required to review civil actions in which a prisoner proceeds *in forma pauperis* ("IFP"). *See* 28 U.S.C. § 1915(e)(2)(B). When reviewing such actions, the PLRA instructs courts to dismiss cases that are at any time frivolous or malicious, fail to state a claim on which relief may be granted, or seek

monetary relief against a defendant who is immune from suit. *Id.* "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)).

As Plaintiff is proceeding IFP, the applicable provisions of the PLRA apply to the screening of his Complaint. (*See* IFP Appl., ECF No. 5; Order, Nov. 18, 2019, ECF No. 9.) "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). In order to survive a dismissal for failure to state a claim, a complaint must allege "sufficient factual matter to show that the claim is facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A plaintiff must be able to demonstrate that "each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* at 676. Furthermore, while *pro se* pleadings are liberally construed, they "still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

## III.    DISCUSSION

### A.    The Department of Corrections

Plaintiff's original complaint named the DOC as a Defendant in this action. (Compl., ECF No. 1.) Plaintiff's Amended Complaint, however, no longer appears to assert any claims against the DOC and does not list it as a named Defendant. (*See generally* Am. Compl., ECF No. 10.) Nevertheless, to the extent Plaintiff may be attempting to raise any claims against the DOC, a state's department of corrections is not a "person" under § 1983 and cannot be sued under the statute. *See Pettaway v. SCI Albion*, 487 F. App'x 766, 768 (3d Cir. 2012) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). The Court, therefore, dismisses the DOC with prejudice from this action.

### B.    Eighth Amendment Excessive Force

Plaintiff argues that Sergeant Donet, Sergeant Rodriguez, and Officer Raylock violated his Eighth Amendment rights against excessive force. (Am. Compl., ECF No. 10 at 2-3.) Plaintiff avers that on October 11, 2018, while handcuffed, Sergeant Donet slammed him to the floor of his cell "for no reason," causing Plaintiff to hit his head. (Am. Compl., ECF No. 10 at 9.) Following this incident, Plaintiff was taken to the medical department where he complained to Sergeant Rodriguez that his handcuffs were too tight. (*Id.*) Plaintiff alleges that despite his complaints, Sergeant Rodriguez refused to loosen his handcuffs, causing Plaintiff to suffer numbness and pain in his hands and arm. (*Id.*) Plaintiff also alleges that on a separate occasion, Officer Raylock assaulted him by "grabbing him," forcing him to the ground, and ordering other officers to pepper spray him, all while Plaintiff was handcuffed. (*Id.* at 19.)

In reviewing excessive force claims under the Eighth Amendment, courts must determine whether the "force was applied in a good-faith effort to maintain or restore discipline, or

maliciously and sadistically to cause harm." *Monroe v. Phelps*, 520 F. App'x 67, 70 (3d Cir. 2013) (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).  Determining whether the force applied was excessive requires the weighing of several factors, including: (1) the need for force; (2) the relationship between that need and the amount of force used; (3) the extent of the injury; (4) the extent of the threat to safety "as reasonably perceived by responsible officials[;]" and (5) "any efforts made to temper the severity of a forceful response." *Id.* (internal quotation marks omitted) (quoting *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000)).  A finding that excessive force was used, or vice versa, must depend on the extent of the force and the surrounding circumstances, not upon the resulting injury.  *Id.* (citing *Smith v. Mensinger*, 293 F.3d 641, 648 (3d Cir. 2002)).

Giving Plaintiff all reasonable inferences, the Court finds that he has alleged sufficient facts to state a claim for excessive force against Sergeant Donet, Sergeant Rodriguez, and Officer Raylock.  Sergeant Donet allegedly used excessive force in throwing Plaintiff to the ground without any justification.  Sergeant Rodriguez ignored Plaintiff's complaints of excessively tight handcuffs.  *See Kopec v. Tate*, 361 F.3d 772, 777 (3d Cir. 2004) (holding that a plaintiff may establish an excessive force claim against an officer who ignores the plaintiff's complaint of unreasonably tight handcuffs).  Additionally, Officer Raylock allegedly forced Plaintiff to the ground and ordered other officers to pepper spray him without any apparent reason, and while Plaintiff was already handcuffed around his wrists and ankles.  Each of these instances raises questions as to whether there was a need for force, the relationship between the need for force and the amount of force used, and the extent of the threat to safety as reasonably perceived by the prison officials.  *See Monroe*, 520 F. App'x at 70.  Accordingly, Plaintiff's excessive force claims against Sergeant Donet, Sergeant Rodriguez, and Officer Raylock are permitted to proceed.

C.     **First Amendment Retaliation**

Plaintiff raises First Amendment retaliation claims against Ms. Cortes, Officer Jennings Officer Spenatta, Lieutenant Patterson, Officer Whitlock, Sergeant Mendoza, Officer Raily, Superintendent Emlich, Superintendent Richards, Major Sears, and John Doe.  (Am. Compl., ECF No. 10 at 3-8.)  In order to set forth a claim of First Amendment retaliation, a plaintiff must adequately allege that: "(1) his conduct was constitutionally protected; (2) he suffered an adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him."  *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016) (internal footnotes and citations omitted).  To rise to the level of an adverse action, a punishment must be sufficient to "deter a person of ordinary firmness from exercising his [constitutional] rights."  *Thomas v. Independence Township*, 463 F.3d 285, 296 (3d Cir. 2006).  With regard to the third prong, a causal connection may be demonstrated through either "an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action" or "a pattern of antagonism coupled with timing to establish a causal link."  *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).  If a plaintiff is unable to demonstrate either of these showings, he must establish that "from the evidence gleaned from the record as a whole[,] the trier of fact should infer causation."  *Id.* (internal quotation marks and citation omitted).

1.     *Ms. Cortes*

Plaintiff argues that Ms. Cortes "violated the Plaintiff's due process seeking retaliation for the filing of grievances and PREA Complaint against co-workers[.]"  (Am. Compl., ECF No. 10 at 3.)  The factual allegations underlying Plaintiff's claim suggest that around November 2, 2017, he filed a grievance against one of Ms. Cortes's co-workers and that, in retaliation, Ms. Cortes

violated Plaintiff's rights at his October 15, 2018 disciplinary hearing. (*Id.* at 11-12.) However, the almost one-year time period between these two events does not indicate the type of temporal proximity that would be unusually suggestive. *See Revell v. City of Jersey City*, 394 F. App'x 903, 907 (3d Cir. 2010) (finding that allegedly retaliatory action taken one year later did not "satisfy the standard of 'an unusually suggestive temporary proximity'"); *see also C.M. v. Bd. of Educ. of Union Cty. Reg'l High Sch. Dist.*, 128 F. App'x 876, 883 (3d Cir. 2005) (finding that a three-month period between protected conduct and allegedly adverse action was "not so close as to be unusually suggestive of retaliatory motive"). Plaintiff has not alleged any "other evidence" which would indicate that Ms. Cortes's alleged mishandling of the disciplinary hearing was motivated by Plaintiff's previous grievance. *See Rozum*, 834 F.3d at 424. Plaintiff, accordingly, has failed to state a claim for First Amendment retaliation against Ms. Cortes. The Court dismisses this claim without prejudice.

    2.  *Officer Jennings*

  Plaintiff states that Officer Jennings violated his First Amendment rights by "seeking retaliation for filing grievances and [a] PREA complaint." (Am. Compl., ECF No. 10 at 4.) It appears that the basis for this claim stems from an incident which occurred on July 22, 2018. (*Id.* at 16.) Plaintiff states that while he was using the bathroom in his cell, Officer Jennings passed by and stated that "he like[d] what he saw." (*Id.*) Plaintiff later verbally informed Sergeant Johnson what had occurred, although Sergeant Johnson "did nothing." (*Id.*) Plaintiff states that he was subjected to a strip search when he returned to his unit the following day, despite having already been strip searched earlier in the day. (*Id.* at 17.) Afterwards, Plaintiff filed a PREA complaint against Officer Jennings. (*Id.* at 18.)

Based upon these allegations and construing all interferences in favor of Plaintiff, the Court finds that Plaintiff has sufficiently pleaded a First Amendment retaliation claim against Officer Jennings. First, Plaintiff has adequately alleged that he engaged in constitutionally protected conduct by complaining to a Sergeant about the behavior of Officer Jennings. *See Rozum*, 834 F.3d at 422-24 (holding that a prisoner's filing of a grievance, or a statement that he intends to file a grievance, is a constitutionally protected activity). Second, Plaintiff has adequately alleged an adverse action—that he was subjected to an unnecessary strip search in retaliation. *See Grohs v. Holmes*, No. 13-7870, 2014 WL 4896834, at *9 (D.N.J. Sept. 30, 2014) (finding that a strip search "could rise to the level of an adverse action" (citing *Watson v. Fisher*, 558 F. App'x 141, 142 (3d Cir. 2014)). Third, the temporal proximity of one day between the protected conduct and Officer Jennings's adverse action is unduly suggestive. *See Brant v. Varano*, 717 F. App'x 146, 150 (3d Cir. 2017) (finding officer's adverse action on the same day prisoner filed a lawsuit was suggestive of retaliation at the prima facie stage); *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989) (finding a two-day period was suggestive of a causal link). Plaintiff, accordingly, has sufficiently alleged each of the elements required for a prima facie showing of a First Amendment retaliation claim. This claim against Officer Jennings is, therefore, permitted to proceed.

        3.    *Officer Spenatta*

Officer Spenatta is also alleged to have violated Plaintiff's First Amendment rights by retaliating against him for filing grievances and PREA complaints. (Am. Compl., ECF No. 10 at 4.) Plaintiff states that on October 19, 2018, Officer Spenatta came to his cell and inquired whether Plaintiff wanted to review camera footage related to one of his disciplinary hearings. (*Id.* at 14.) Plaintiff allegedly replied that "this is not proper procedures of disciplinary hearings," and that he "want[ed] to view the camra footage on the first hearing date." (*Id.*) Plaintiff appears to assert

that this incident was Officer Spenatta's attempt to "alter[] and/or disrupt" Plaintiff's disciplinary hearing and that it was done in retaliation for Plaintiff's previous filing of a PREA complaint against Officer Spenatta. (*Id.* at 14-15.) Plaintiff, however, does not adequately allege that an adverse action occurred. Plaintiff states that Officer Spenatta offered to let him review video footage related to his disciplinary hearing. This is not the type of conduct that would "deter a person of ordinary firmness from exercising his constitutional rights." *Thomas*, 463 F.3d at 296. Accordingly, Plaintiff's claim against Officer Spenatta is dismissed without prejudice for failure to state a claim.

4.     *Lieutenant Patterson*

Plaintiff alleges that Lieutenant Patterson "violated the Plaintiff's constitutional rights of the first and eighth amendments for filing grievances/complaints against white officers who has been named homosexual/bisexual by fellow officers violating equal protection and racial discrimination to the fourteenth amendment, retaliative which is racially motivated because of the Plaintiff's skin color." (Am. Compl., ECF No. 10 at 5-6.) The factual allegations underlying this claim appear to be the following:

> [O]n October 19, 2018 the Plaintiff was told by Sergeant Mendoza that the Plaintiff was going to courtline camra more when asked the Plaintiff was told ordered by the Defendant L.T. Patterson whom also stated the Plaintiff was camra more everytime he comes out his cell a violation of his Due Process which the Plaintiff was not given notice and furthermore there is no such status in the 10A and the Plaintiff has been on involuntary PC since 2018 an no such more, receiving disparate treatment of involuntary PC inmate denying equal protection without rational explanation for it. The Plaintiff is not the first inmate who has been placed on such status without rational.

(*Id.* at 15.)

> The Defendant Sean Patterson violated the Plaintiff's constitutional rights by seeking retaliation for filing of complaints/grievances

> against him and homosexual/bisexual co-workers a violation of the
> first amendment and eighth amendment which he is the property
> Sergeant and handles all property, mails records and property claims
> with supporting documents violated the United States Constitution.

(*Id.* at 30.)

The Court is unable to discern what retaliatory action Plaintiff is alleging occurred. Although the Federal Rules of Civil Procedure do not require a plaintiff to "set forth an intricately detailed description" of each claim, the complaint must still "give [each] defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 149-50 n.3 (1984) (internal quotation marks and citation omitted). Despite its best efforts, this Court cannot determine whether Plaintiff has alleged sufficient information to state a claim against Lieutenant Patterson for First Amendment retaliation. The Court, therefore, dismisses this claim without prejudice.

5.    *Officer Whitlock*

Plaintiff contends that Officer Whitlock also violated his First Amendment rights by retaliating against him for filing grievances and PREA complaints against other officers. (Am. Compl., ECF No. 10 at 5.) Plaintiff's Amended Complaint indicates that Officer Whitlock would give Plaintiff "predatory looks" when he came out of the shower and that when Plaintiff started using a "block" to cover his cell, Officer Whitlock began giving him disciplinary charges. (*Id.* at 21.) Plaintiff contends that "as a means of retaliation" for using the "block," Plaintiff was kept in administrative segregation. (*Id.*)

Plaintiff, however, fails to adequately allege the third element of a retaliation claim—that the "constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him." *Rozum*, 834 F.3d at 422. While Plaintiff states in passing that Officer Whitlock violated his First Amendment rights by retaliating against him for filing grievances and PREA

complaints, the factual allegations supporting this claim do not indicate that the grievances were at all a motivating factor in Officer Whitlock's issuance of disciplinary charges. Rather, the basis for the disciplinary charges seems to be Officer Whitlock's alleged dislike of Plaintiff using a "block" in his cell. This is not indicative of retaliation based upon the First Amendment. Accordingly, Plaintiff's claim against Officer Whitlock is dismissed without prejudice for failure to state a claim.

### 6.    *Sergeant Mendoza*

Plaintiff contends that Sergeant Mendoza violated his First Amendment rights by retaliating against him for filing grievances against other officers. (Am. Compl., ECF No. 10 at 5.) Plaintiff, however, does not provide a sufficient factual basis for this claim. (*See id.*) Plaintiff merely states that when Sergeant Mendoza investigated a missing property claim that Plaintiff filed in 2019, he indicated to Plaintiff that "two racist bias administrative figures" had "falsified" the property form to make it appear as though no property had been taken. (*Id.* at 26.) These limited facts do not support the elements necessary to plead a First Amendment retaliation claim. Accordingly, the claim against Sergeant Mendoza is dismissed without prejudice.

### 7.    *Officer Raily*

Plaintiff asserts that Officer Raily also retaliated against him for filing grievances against other officers. (Am. Compl., ECF No. 10 at 6.) The only factual support Plaintiff provides for this claim is that he was "moved off of 1EE unit on November 1, 2017 by a Sergeant Haywood to 200 unit cell 41 for no disciplinary reason besides a racist officer name[d] Raily[.]" (*Id.* at 13.) Significantly, Plaintiff does not allege that his transfer was based upon his filing of a grievance or PREA complaint. Rather, Plaintiff appears to allege that racial bias was the basis for his transfer. These facts do not support a claim for retaliation based upon the First Amendment. Therefore, the

First Amendment retaliation claim against Officer Raily is dismissed without prejudice for failure to state a claim.

8.     *Superintendent Emlich*

Plaintiff contends that Superintendent Emlich retaliated against him for filing PREA complaints and grievances by refusing to remove him from protective custody and by "retaliating through property claims which [were] denied[.]"  (Am. Compl., ECF No. 10 at 6-7.)  Plaintiff alleges Superintendent Emlich knew about the grievances and PREA complaints Plaintiff filed because she was the individual who forwarded them to the SID.  (*Id.* at 7.)  Construing all inferences in favor of Plaintiff, the Court finds that he has sufficiently alleged a First Amendment claim against Superintendent Emlich.  First, Plaintiff alleged that he engaged in constitutionally protected conduct by filing grievances and PREA complaints of which Superintendent Emlich was aware.  *See Rozum*, 34 F.3d at 422 (holding that filing a prison grievance is a constitutionally protected activity); *see also Singleton v. Shearer*, No. 17-1027, 2019 WL 3337060, at *5 (M.D. Pa. July 25, 2019) (finding that filing a PREA complaint is a constitutionally protected activity).  Second, Plaintiff alleged he was subjected to an adverse action—confinement to involuntary protective custody—as a result.  *See Szemple v. Talbot*, 141 F. App'x 52, 54 (3d Cir. 2005) (holding that "confinement in administrative segregation can constitute adverse action").  Third, Plaintiff alleged that his filing of grievances and complaints was the substantial or motivating factor in his confinement to involuntary protective custody.  (Am. Compl., ECF No. 10 at 25.)

Although Plaintiff does not expressly provide a timeline of events to establish temporal proximity, Plaintiff does allege elsewhere in his Amended Complaint that he has filed multiple grievances since 2018.  (*Id.* at 3, 11, 14, 18.)  Plaintiff's placement in involuntary protective custody had continued through the filing of Plaintiff's amended complaint. (*Id.* at 25.)  At this

early stage, the Court will infer causation, and possible temporal proximity, from the allegations as a whole. *See Rozum*, 834 F.3d at 422. Therefore, Plaintiff's First Amendment retaliation claim against Superintendent Emlich is permitted to proceed.

9. *Superintendent Richards*

Plaintiff asserts that Superintendent Richards denied his requests to be released from involuntary protective custody status in retaliation for "claims by fellow officers as to his sexuality."[6] (Am. Compl., ECF No. 10 at 7, 12.) As evidence of retaliation, Plaintiff alleges that all other protective custody inmates except for Plaintiff were removed from the unit. (*Id.* at 7.) However, Plaintiff's allegation that other officers have made "claims" about Superintendent Richards's "sexuality" does not set forth a claim that Plaintiff himself engaged in constitutionally protected conduct. Section 1983 claims based upon First Amendment retaliation "require, as an element[,] that Plaintiff engaged in constitutionally protected conduct[.]" *Thompson v. Warren*, No. 13-4334, 2016 WL 7217207, at *3 (D.N.J. Dec. 12, 2016) (emphasis added) (citing *Considine v. Jagodinski*, 646 F. App'x 283, 286 (3d Cir. 2016)). Absent constitutionally protected conduct, Plaintiff cannot establish a claim for First Amendment retaliation. Thus, Plaintiff's claim against Superintendent Richards is dismissed without prejudice for failure to state a claim.

10. *Major Sears*

Plaintiff states that Major Sears violated his First Amendment rights by keeping "Plaintiff in 'B-Blocks' because of fellow white officers who has been named as homosexual/bisexual and racist [. . .] this is clearly retaliation by officers/administrative parties named in the Complaint." (Am. Compl., ECF No. 10 at 7.) The Amended Complaint does not provide any additional

---

[6] Plaintiff appears to be referencing the sexuality of Superintendent Richards. (Am. Compl., ECF No. 10 at 7.)

allegations against Major Sears regarding this alleged First Amendment violation, except to state that Major Sears "is the Custody Major who allows the Plaintiff to be kept on the North Compound on Involuntary PC Status." (*Id.* at 26, 31.)  Significantly, Plaintiff's allegations against Major Sears are devoid of any mention of protected conduct which could support a claim of First Amendment retaliation. (*Id.* at 7.)

To the extent that Plaintiff may be alleging that calling officers "homosexual/bisexual and racist" was protected conduct, "[c]ourts have consistently held that prisoners do not have a constitutionally protected right to use inappropriate, disrespectful, and derogatory language." *Whitenight v. Wetzel*, No. 16-1864, 2019 WL 6828392, at *7 (W.D. Pa. Dec. 12, 2019) (citing *Torres v. Clark*, 522 F. App'x 103, 106 (3d Cir. 2013)); *see also Brown v. Hannah*, 850 F. Supp. 2d 471, 479 (M.D. Pa. 2012) (holding that the plaintiff's "retaliation claim fails the first prong . . . because he does not establish any basis to show that he had a constitutionally protected right, in the prison setting, to use inappropriate, disrespectful and derogatory language to [a prison official]").  Accordingly, Plaintiff's First Amendment retaliation claim against Major Sears is dismissed without prejudice.

11.    *John Doe*

Plaintiff alleges that SID officer John Doe, who was assigned to investigate Plaintiff's PREA complaints, also violated Plaintiff's First Amendment rights. (Am. Compl., ECF No. 10 at 31.) Plaintiff appears to argue that John Doe "falsified disciplinary charges" and had "bias" against Plaintiff's PREA claims because John Doe was a "homosexual." (*Id.* at 8, 18, 31.)  Notably, Plaintiff does not appear to allege that John Doe retaliated against him for exercising his First Amendment rights to file a grievance.  Rather, Plaintiff appears to allege that John Doe was biased in reviewing Plaintiff's complaint because John Doe was "a homosexual" and Plaintiff was "a

heterosexual male who felt bias by this officer." (*Id.* at 8.)  Additionally, Plaintiff does not allege what adverse action was taken by John Doe.  Given this factual basis, Plaintiff has not set forth a claim against John Doe based upon First Amendment retaliation grounds.  This claim against John Doe is, therefore, dismissed without prejudice.

**D.    Due Process Violations**

Plaintiff argues that Ms. Cortes, Officer Whitlock, Superintendent Richards, and Sergeant Donet have each violated his due process rights. (*Id.* at 3, 9, 12-13, 21.)  Since each Defendant implicates different due process concerns, the Court will address Plaintiff's claim against each Defendant in turn.

1.    *Ms. Cortes*

Plaintiff asserts that Ms. Cortes violated his due process rights by not affording him the opportunity to present a defense at his October 15, 2018 disciplinary hearing and for imposing "fabricated sanctions." (Am. Compl., ECF No. 10 at 3.)  Plaintiff also alleges that Ms. Cortes was biased against him and that she informed Plaintiff she was "not dealing with the 'burden of proof' or 'standard of review'" at his disciplinary hearing. (*Id.* at 11.)  It is not clear from Plaintiff's complaint, however, what sanctions he received as a result of this allegedly unconstitutional disciplinary hearing. (*See generally id.* at 11-12.)

It is well established that prisoners "may not be deprived of life, liberty, or property without due process of law." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  At a prison disciplinary hearing, due process generally requires that the inmate:

> (1) appear before an impartial decision-making body; (2) be given not less than 24 hours written notice of the charges against him; (3) be afforded the opportunity to call witnesses and present documentary evidence; (4) be permitted assistance from an inmate representative; and (5) receive a written decision explaining the decision-maker's conclusions.

*Crosby v. Piazza*, 465 F. App'x 168, 172 (3d Cir. 2012) (citing *Wolff*, 418 U.S. at 563-71).

However, unless the sanctions resulting from a disciplinary hearing affect a protected liberty interest, an inmate is generally not entitled to procedural due process. *See Sandin v. Conner*, 515 U.S. 472, 483-84 (1995) (holding that not all sanctions resulting from prison disciplinary proceedings affect liberty interests). Prisoners are afforded the protections of due process when a sanction "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.

Here, Plaintiff does not allege that the sanctions he received affected his liberty interests. Nor does Plaintiff identify the sanctions he received for the Court to determine whether those sanctions imposed an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484; *see Edward v. Yates*, No. 15-5780, 2016 WL 6562048, at *4 (D.N.J. Nov. 4, 2016) (dismissing the plaintiff's claim for failure to assert that any sanction imposed affected his protected liberty interests); *see also Clemens v. Lockett*, No. 11-1482, 2013 WL 6230648, at *6 (W.D. Pa. Dec. 2, 2013) (dismissing the plaintiff's due process claim for not providing what his disciplinary sanctions were). Absent additional information, Plaintiff has not articulated a sufficient liberty interest which would trigger a valid due process claim against Ms. Cortes. Therefore, the claim against Ms. Cortes is dismissed without prejudice.

    2.    *Officer Whitlock*

Plaintiff appears to assert that Officer Whitlock violated his due process rights by failing to return Plaintiff's property until at least a month after his disciplinary charges were issued. (Am. Compl., ECF No. 10 at 21.) Specifically, Plaintiff states, "[t]he Plaintiff was then charged with disciplinary charges which his inmate property was took which this officer gave the Plaintiff back

all his inmate property but kept his television on the unit until December 31, 2017 my disciplinary charges was November 8, 2017." (*Id.*)

Although prisoners may not be deprived of property without due process, "[a] prisoner's due process claim based on a state actor's unauthorized deprivation of property is not actionable under § 1983 unless no adequate post-deprivation remedy is available." *Mattis v. Dohman*, 260 F. App'x 458, 461 (3d Cir. 2008) (citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)). Prison grievance systems which allow prisoners to complain about lost property are considered adequate post-deprivation remedies. *See id.* (citing *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 422 (3d Cir. 2000)). To the extent that a plaintiff is not satisfied with the outcome of the administrative process, he may still file a state court tort suit. *Id.* (citing *Hudson*, 468 U.S. at 535). Here, Plaintiff has not alleged any facts which would indicate he did not have an adequate post-deprivation remedy available. Therefore, this due process claim against Officer Whitlock is dismissed without prejudice for failure to state a claim.

### 3.    *Superintendent Richards*

Plaintiff appears to allege that Superintendent Richards violated his due process rights by keeping Plaintiff in involuntary protective custody and denying Plaintiff's repeated requests to be released from such custody. (Am. Compl., ECF No. 10 at 12-13.) Plaintiff submits that he remained in involuntary protective custody for almost two years. (*Id.* at 15.)

To set forth such a due process claim, Plaintiff must adequately allege that: "(1) the state, through the duration and conditions of his confinement, imposed 'atypical and significant hardship' on him giving rise to a protected liberty interest; and (2) the state deprived him of the process he was due to protect that interest." *Brathwaite v. Phelps*, 734 F. App'x 114, 117 (3d Cir. 2018) (citing *Sandin*, 515 U.S. at 484, 486 and *Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000)).

In considering what constitutes "atypical and significant hardship" within the prison setting, the Third Circuit looks to the conditions and duration of the prisoner's segregated confinement. *See Shoats*, 213 F.3d at 144 (considering "the amount of time the prisoner was placed into disciplinary segregation; and . . . whether the conditions of his confinement in disciplinary segregation were significantly more restrictive than those imposed upon other inmates"); *Griffin v. Vaughn*, 112 F.3d 703, 708-09 (3d Cir. 1997) ("If an inmate is committed for an atypical period of time to undesirable conditions in violation of state law, that is clearly a factor to be considered in determining whether he has been subjected to atypical and significant hardship and, accordingly, whether due process protection has been triggered.")

In his Amended Complaint, Plaintiff asserts that he has been in involuntary protective custody for almost two years. (Am. Compl., ECF No. 10 at 25.) While in involuntary protective custody, Plaintiff alleges he suffered various deprivations such as a lack of programming and indoor recreation. At this early stage of the proceedings, the Court finds that Plaintiff's allegations regarding the length and conditions of his confinement in involuntary protective custody are sufficient to trigger due process protections. Having made this determination, the Court must next consider what process Plaintiff is entitled to.

"If there is a liberty interest that has been adversely affected by administrative segregation, we have held that the prison meets its due process obligations if it provides meaningful, periodic reviews of the prisoner's placement in segregation." *Carter v. Beard*, 392 F. App'x 82, 84 (3d Cir. 2010) (citing *Shoats*, 213 F.3d at 145-47). Review hearings that are merely perfunctory or a "sham" will violate due process. *See Sourbeer v. Robinson*, 791 F.2d 1094, 1101 (3d Cir. 1986) ("[T]o insure that periodic review does not become simply a sham, the content and substance of that review must be scrutinized under the illumination of the fourteenth amendment.") (quoting

*Mims v. Shapp*, 744 F.2d 946, 954 (3d Cir. 1984)); *see also Washington-El v. Beard*, 562 F. App'x 61, 64 (3d Cir. 2014) (relying on *Sourbeer* but finding no evidence on summary judgment that hearings were perfunctory or inadequate).

The Court construes Plaintiff's Amended Complaint to allege that Superintendent Richards violated Plaintiff's due process rights by failing to provide him with fair and adequate reviews of his placement in protective custody. Such an allegation indicates a possible due process violation. The Court, therefore, permits Plaintiff's due process claim against Superintendent Richards to proceed.

### 4.    *Sergeant Donet*

Plaintiff alleges that Sergeant Donet violated his due process rights by filing false disciplinary charges against him arising from the incident which occurred on October 11, 2018. (Am. Compl., ECF No. 10 at 9, 27.)  Specifically, Plaintiff states that Sergeant Donet falsely accused him of acting aggressively after he was informed that he would be placed on TCC status. (*Id.* at 9.)  Plaintiff alleges that this falsified report was written in retaliation for his prior filing of grievances and PREA complaints against other officers, and with the knowledge that the falsified report would lead to further disciplinary confinement.  (*Id.* at 27.)  Yet, the filing of false disciplinary charges "does not itself violate a prisoner's constitutional rights, so long as procedural due process protections were provided."  *See Richardson v. Sherrer*, 344 F. App'x 755, 757 (3d Cir. 2009).  "Due process is satisfied where an inmate is afforded an opportunity to be heard and to defend against the allegedly false misconduct reports." *Thomas v. McCoy*, 467 F. App'x 94, 97 (3d Cir. 2012).  Here, Plaintiff does not allege that he was denied a hearing on these allegedly false disciplinary charges.  Thus, based upon the information provided, Plaintiff has not sufficiently

pled a due process violation. Accordingly, this claim against Sergeant Donet is dismissed without prejudice.

### E.    Sexual Harassment

#### 1.    Officers Jennings and Spenatta

Plaintiff alleges that he was sexually harassed by Officer Jennings and Officer Spenatta. (Am. Compl., ECF No. 10 at 4.) An inmate's claim of sexual harassment by a prison guard or official may rise to the level of an Eighth Amendment violation. *See Jones v. Treece*, 774 F. App'x 65, 67 (3d Cir. 2019) (applying Eighth Amendment standard to inmate's claim of sexual harassment); *see also Bey v. N.J. Dep't of Corr.*, No. 18-3693, 2018 WL 5784999, at *5 (D.N.J. Nov. 5, 2018). Similar to any other Eighth Amendment claim, a claim alleging sexual harassment "must meet two requirements: (1) the deprivation alleged must be, objectively, sufficiently serious; and (2) the prison official must have a sufficiently culpable state of mind." *Jones*, 774 F. App'x at 67 (internal quotation marks omitted) (quoting *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001)). In prison cases, the requisite state of mind is deliberate indifference. *See id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Generally, courts have held that "sexual harassment in the absence of contact or touching does not establish a sufficiently serious infliction of pain." *Bower v. Cannon*, No. 17-10905, 2018 WL 6441034, at *4 (D.N.J. Dec. 7, 2018); *see also Tate v. Wiggins*, 805 F. App'x 159, 161 (3d Cir. 2020) (holding that a prison official's exclamation of "strong sexual obscenities" did not violate the Constitution); *Deeck v. Serody*, No. 19-5061, 2019 WL 5802704, at *4 (E.D. Pa. Nov. 6, 2019); *Chambliss v. Jones*, No. 14-2435, 2015 WL 328064, at *3 (M.D. Pa. Jan. 26, 2015). The Third Circuit has previously stated:

> While it is possible for sexual abuse of a prisoner to violate the Eighth Amendment, a small number of incidents in which a prisoner

> is verbally harassed, touched, and pressed against without his consent do not amount to such a violation. Rather, isolated episodes of harassment and touching . . . are despicable and, if true, they may potentially be the basis of state tort actions. But they do not involve a harm of federal constitutional proportions as defined by the Supreme Court.

*Obiegbu v. Werlinger*, 581 F. App'x 119, 121 (3d Cir. 2014) (internal quotation marks and citation omitted).

In the present case, Plaintiff has not alleged more than isolated incidents of sexual harassment. Plaintiff alleges that Officer Jennings looked in Plaintiff's cell while Plaintiff was using the bathroom and stated that "he like[d] what he saw." (Am. Compl., ECF No. 10 at 16.) Officer Spenatta, while conducting a strip search of Plaintiff, allegedly stated that he "wanted to see [Plaintiff's] penis." (*Id.* at 14.) These two separate and isolated incidents of verbal harassment, without more, do not rise to the level of an Eighth Amendment violation. *See Obiegbu*, 581 F. App'x at 121. Plaintiff's sexual harassment claims against Officer Jennings and Officer Spenatta, therefore, are dismissed without prejudice for failure to state a claim.

### 2.    *Sergeant Johnson*

Plaintiff also nominally invokes a failure to supervise claim against Sergeant Johnson related to the sexual harassment incidents. (Am. Compl., ECF No. 10 at 16, 29.) Plaintiff states simply that Sergeant Johnson was "grossly negligent in supervising subordinates" in an apparent reference to the incidents of alleged sexual harassment. (*Id.* at 29.) In order to establish a failure to supervise claim, a plaintiff must:

> [I]dentify a supervisory policy or practice that the supervisor failed to employ, and then prove that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure.

*Fox v. Bayside State Prison*, 726 F. App'x 865, 868 (3d Cir. 2018) (quoting *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 317 (3d Cir. 2014)).

Here, Plaintiff has not adequately alleged the elements necessary to set forth a failure to supervise claim. Rather, Plaintiff states no more than an unadorned legal conclusion which is insufficient to sustain a claim. *See Ashcroft*, 556 U.S. at 678. Thus, Plaintiff's failure to supervise claim against Sergeant Donet is dismissed without prejudice for failure to state a claim.

To the extent Plaintiff may be attempting to assert an Eighth Amendment deliberate indifference claim against Sergeant Johnson, that claim also fails. (Am. Compl., ECF No. 10 at 29.) Plaintiff contends that after he informed Sergeant Johnson that Officer Jennings had peered into his cell and stated that he "like[d] what he saw," Sergeant Johnson "did nothing." (*Id.* at 16.) Plaintiff argues Sergeant Johnson's failure "to act on [this] information" evinced deliberate indifference. (*Id.* at 29.) However, as discussed above, Plaintiff has not demonstrated that this single, isolated incident of alleged sexual harassment was sufficiently serious to rise to the level of an Eighth Amendment violation. Plaintiff, accordingly, cannot meet the first prong of an Eighth Amendment claim—that a sufficiently serious deprivation occurred. *See Jones*, 774 F. App'x at 67. Therefore, Plaintiff's Eighth Amendment deliberate indifference claim against Sergeant Johnson is also dismissed without prejudice for failure to state a claim.

### F.    Equal Protection Violations

Plaintiff appears to argue that Superintendent Richards, Major Sears, and Officer Raily each violated his rights under the Equal Protection Clause. (Am. Compl., ECF No. 10 at 30-31.) Plaintiff alleges that Superintendent Richards and Major Sears acted with "discriminatory intent" in moving Plaintiff "off of the North Compound" of the prison and that Officer Raily twice had Plaintiff moved off of his unit because of "the color of the Plaintiff's skin." (*Id.*)

The Equal Protection Clause of the Fourteenth Amendment states that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. In order to plead an equal protection violation, a plaintiff must allege either that he is "a member of a protected class and was treated differently from [others not belonging to that class], or [that] he belongs to a 'class of one' and was treated differently from others similarly situated without any rational basis for the difference in treatment." *Wofford v. Lanigan*, No. 14-5723, 2015 WL 9480016, at *5 (D.N.J. Dec. 28, 2015) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 563 (2000)). A successful equal protection claim must allege that the plaintiff was subjected to intentional or purposeful discrimination. *See Hassan v. City of New York*, 804 F.3d 277, 294 (3d Cir. 2015). The plaintiff may show discriminatory purpose by demonstrating that the defendant engaged in the challenged action "at least partially because the action would benefit or burden an identifiable group." *Doe ex rel. Doe v. Lower Merion Sch. Dist.*, 665 F.3d 524, 548 (3d Cir. 2011) (citing *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)).

Here, Plaintiff has not alleged sufficient facts to support an equal protection claim. He has not alleged that he is a member of a protected class, nor has he included any facts pertaining to similarly situated persons. Absent additional information, Plaintiff has provided only bald assertions which are insufficient to state a claim. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers labels and conclusions or a formulaic recitation of the events of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." (internal quotation marks and citations omitted)). Accordingly, the equal protection claims against Superintendent Richards, Major Sears, and Officer Raily are dismissed without prejudice.

G.    **Administrator Davis**

Plaintiff asserts, without any factual support, that Administrator Davis committed various constitutional violations.  (Am. Compl., ECF No. 10 at 28-29.)  Plaintiff's allegations against Administrator Davis are, in their entirety, as follows:

> The Defendant Bruce Davis violated the Plaintiff's constitutional rights of the Eighth Amendment exhibiting deliberate indifference by failing to act on information while the unconstitutional acts were occurring.
>
> The Defendant Bruce Davis breached that duty by failing to protect when the Plaintiff informed him of the chronological events that has took place which the Plaintiff knew would occur again, which constitute negligence and failure to protect.
>
> The Defendant Bruce Davis breach of duty resulted in serious physical and emotional injury and damages which constitutes deliberate indifference.

(*Id.*)

Although a plaintiff is not required to allege "detailed factual allegations," he must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  A complaint must contain more than "labels and conclusions or a formulaic recitation of the elements of a cause of action." *Id.* (citing *Twombly*, 550 U.S. at 555).  Here, Plaintiff has not provided more than conclusory statements against Administrator Davis.  Therefore, any claims against Administrator Davis are dismissed for failure to state a claim.

IV.    **MOTION FOR A PRELIMINARY INJUNCTION**

Prior to filing his Amended Complaint, Plaintiff separately filed a motion for a TRO and preliminary injunction.  (Mot., ECF No. 6.)  He seeks to have the Court order "all named defendants to stay away from [him]."  (*Id.* at 3.)  In support of his motion, Plaintiff alleges that

since he initiated the instant lawsuit, he has been subjected to retaliation in the form of assault by various officers and that his property has been stolen. (*Id.* at 2.)

The standard for granting a TRO is the same as that for a preliminary injunction. *Nutrasweet Co. v. Vit-Mar Enters., Inc.*, 112 F.3d 689, 693 (3d Cir. 1997). A party seeking a TRO or preliminary injunction must show:

> (1) a reasonable likelihood of success on the merits; (2) irreparable harm to the applicant; (3) whether the denial of a preliminary injunction would injure the moving party more than the issuance of an injunction would harm the non-moving party; and (4) whether the grant of relief would serve the public interest.

*Holland v. Rosen*, 895 F.3d 272, 285-86 (3d Cir. 2018).

"A preliminary injunction 'is an extraordinary remedy . . . which should be granted only in limited circumstances.'" *Holland*, 895 F.3d at 285 (quoting *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1426-27 (3d Cir. 1994)). "This proposition is particularly apt in motions for *preliminary* injunctions, when the motion comes before the facts are developed to a full extent through the normal course of discovery." *Winback & Conserve Program, Inc.*, 42 F.3d at 1427 (emphasis in original). The burden is on the movant to demonstrate, "by a clear showing," that he is entitled to this relief. *See Holland*, 895 F.3d at 285.

With respect to the first factor, Plaintiff must demonstrate a "reasonable likelihood of success on the merits." *Holland*, 895 F.3d at 285. Here, however, Plaintiff has not presented any argument as to his likely success on the merits of his claims. (*See generally* Mot., ECF No. 6.) Rather, he states only that this factor "favors the grant of this motion." (*Id.* at 2.)

As to the second factor, Plaintiff alleges that if all of the named defendants are not ordered to "stay away" from him, he will be subjected to irreparable harm in the form of retaliation. (*Id.* at 2-3.) Plaintiff contends that the day after he filed his initial complaint, one of the named defendants, Lieutenant Patterson, ordered Plaintiff out of his cell, sprayed him with mace, and

issued disciplinary charges against Plaintiff for assault. (*Id.*) Plaintiff also alleges that his property was stolen on an unspecified date and that Lieutenant Patterson has been assigned to investigate the lost property claim. (*Id.*) In addition, Plaintiff vaguely alleges that "Plaintiff is being 'intentionally interfering' by the same homosexual officers named in the complaint." (*Id.* at 2-3.)

As to the third factor—whether the denial of a preliminary injunction would injure the moving party more than the issuance of an injunction would harm the non-moving party— Plaintiff states that his hand has been permanently damaged from the alleged excessive force incident. (*Id.* at 3.) Plaintiff additionally states that, "each time the Plaintiff is retaliated against which the Plaintiff will show cause which the Plaintiff has suffered hardship by named and unnamed defendant(s)." (*Id.*) It is unclear to this Court how Plaintiff's hand injury bears on the third TRO factor. Nonetheless, the Court construes this statement as an argument by Plaintiff that the alleged continued retaliation outweighs any harm to the defendants in granting a TRO or preliminary injunction.

Plaintiff does not address the fourth and final factor regarding whether the grant of relief would serve the public interest.

After careful consideration, this Court finds that Plaintiff has not demonstrated by a clear showing that he is entitled to the extraordinary remedy of a TRO or preliminary injunction at this time. Accordingly, Plaintiff's motion is denied without prejudice.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff's claims against Sergeant Donet, Sergeant Rodriguez, and Officer Raylock for excessive force are permitted to proceed. Plaintiff's claims against Officer Jennings, and Superintendent Emlich for First Amendment retaliation are also permitted to proceed. Plaintiff's due process claim against Superintendent Richards is permitted to proceed.

To the extent Plaintiff is attempting to raise any claims against the New Jersey DOC, those claims are dismissed with prejudice.  The remainder of Plaintiff's § 1983 claims are dismissed without prejudiced as to all Defendants.  Finally, Plaintiff's motion for a TRO or preliminary injunction is denied without prejudice.  An appropriate Order follows.

s/ Michael A. Shipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE